STATE

*vs.*

CHARLES W. GUPTILL

York.    Opinion May 21, 1927.

*Where self-defense is the issue, evidence of some overt act indicating the deceased was the aggressor and the respondent had reasonable grounds of belief that he was in imminent danger must be shown as a basis for the introduction of threats by the deceased, in order to render the exclusion of such evidence reversible error.*

*All conversation between a respondent and the deceased at the time of the homicide and leading up to it, whether of threats or otherwise, indicating ill will between them, is admissible as a part of the res gestae.*

The unqualified exclusion of conversation in the case at bar of an altercation between the respondent and the deceased just prior to the homicide and which according to the respondent continued up to the moment of the shooting, where the only issue was as to who was the aggressor was prejudicial error.

Even though the Appellate Court may feel that the result might have been no different, it can not regard as harmless an erroneous ruling that may have withheld from the jury evidence bearing upon the only issue relied upon in his defense by a respondent on trial for his life and say as a matter of law that the evidence, if admitted, might not have formed a basis for a reasonable doubt in the minds of the jury.

On exceptions. The respondent was indicted for murder for shooting Fay C. Tibbetts on January 22, 1925, at Berwick. During the trial certain testimony as to threats made by the deceased toward the respondent was excluded, the defense being self-defense, and respondent excepted.

Exception sustained.

The case sufficiently appears in the opinion.

*Raymond Fellows, Attorney General, and Perley H. Ford, County Attorney,* for the State.

*William F. Mathews and Sidney F. Stevens,* for respondent.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, STURGIS, BAS-
SETT, PATTANGALL, JJ., MORRILL, A.R.J.
   MORRILL, A.R.J., concurring in the result.

WILSON, C. J.   The respondent was indicted for killing one Fay
C. Tibbetts on January 22nd, 1925 by shooting him with a revolver.
During the course of the trial offers of proof of threats by the deceased
toward the respondent were made, but excluded.   The case is before
this Court on exceptions to the exclusion of this testimony.

During the year previous to the homicide, the respondent had
worked for the deceased on his farm as a laborer.   According to the
testimony of the respondent, though denied by the wife, there had
grown up an improper intimacy between himself and the wife of the
deceased, conclusive evidence of which came to the knowledge of
the deceased about the first of December, 1924, which resulted in
the immediate discharge of the respondent from his employment.

Following his discharge the state claimed that the respondent
worked in New Hampshire, but on January 20th, under circumstan-
ces indicating some unusual purpose in mind, returned to the house
of his grandfather in the village of Berwick in this state, where he
made his home when not away at work.

On the morning of January 22nd, he left his grandfather's house
about eight o'clock taking a revolver belonging to his uncle and with
the understanding that he was to meet his grandfather somewhere
in the village and accompany him into the woods for the day to cut
wood, which would take him past the Tibbett's home.

Instead of meeting his grandfather he stopped at two places one
of them a barn in which he remained, evidently to pass away the
time, until nearly ten o'clock when he started on foot along the road
leading past the Tibbett's home.   He knew the daily custom of the
deceased leaving his home about half past eight o'clock to bring milk
into the village.   On this morning for some reason the deceased was
delayed in leaving his home, and did not start until about ten o'clock.

According to the state's contention, as the respondent finally made
his way along the road in the direction of the Tibbetts' house he
turned into a wood road and after leaving the main road for about two
hundred feet concealed himself in the wood until the deceased in his
team came along, when the respondent came out, and either from

the rear fired at the unsuspecting driver three times, two of the shots taking effect, or the deceased upon seeing the respondent come out of the woods, stopped his team, and while stopped there, the respondent drew his revolver and shot him.

At the time of the shooting the father of the deceased in a team accompanied by two other sons was approaching the scene of the shooting approximately half a mile away. After the shots, the horses of the deceased started to run, whereupon the respondent ran after them, and as he ran alongside, put his revolver in the body of the cart or pung, seized one of the reins which drew the horses outside of the traveled road where they finally stopped just as the father of the deceased came up.

The respondent at the time admitted the shooting to the father and brothers and later told an officer that they had an altercation over a woman, and at another interview that he shot him to get even with him; but so far as the record shows, until he took the stand in his defense never stated or claimed that he had any apprehension of bodily harm from the deceased by reason of any threats or of any assault attempted upon him by the deceased at the time of the shooting.

Three exceptions only to the admission of testimony were perfected, two of which relate to alleged threats made by the deceased against the respondent and another to the conversation between the deceased and respondent at the time of his discharge, the purpose of which according to the respondent's counsel was to show that the respondent was in fear of the deceased.

The first exception was to the exclusion in cross-examination of the grandfather of the respondent by his own counsel of evidence of alleged threats by the deceased against the respondent, which it was not claimed at the time were ever communicated to the respondent; nor does it appear from the record that the Court at this time was informed that the claim was later to be made that the deceased was the aggressor when the shooting occurred, or that they were offered in corroboration of other communicated threats later to be proved. Wharton's Criminal Ev. (10th Ed.) Vol. II p. 1712-13, Sec. 912; Underhill's Crim. Ev. (3rd Ed.) Sec. 506. Under the circumstances disclosed by the record they were, therefore, properly excluded.

While the conversation between the deceased and the respondent

at the time of his discharge was offered after the defense had opened and presumably outlined to the Court and jury, the record does not disclose the nature of the evidence, whether of threats of bodily harm or merely expressions of natural resentment at the discovery of the alleged intimacy between the respondent and the wife of the deceased; and though in the proper order it might have been admissible, it is unnecessary to pass on it, as we think the third exception must be sustained.

The respondent himself finally took the stand in his own behalf, and related his story of what occurred on the morning of January 22nd. According to his testimony he was desirous of avoiding a meeting with the deceased because of the talk which occurred when he was discharged; that he knew the hour when the deceased customarily came to the village with his milk, namely about 8:30; that when in passing down the road about 10 o'clock upon seeing the deceased approaching in the distance on his team, he entered the wood road, thinking he had not been seen, or at least recognized by the deceased; that when opposite the wood road, the deceased stopped his team and followed the respondent's tracks in the snow to where he was concealed in the woods, where a verbal altercation took place. Counsel then offered respondent's testimony as to the nature of the altercation as showing the relations existing between the parties at the time, which was excluded. Respondent further testified that the deceased went back to his team, the respondent following behind; and after the deceased had mounted his seat on the team preparatory to starting, the respondent standing beside the team, the deceased then, according to the respondent, called him some name—at this point the respondent was interrupted by his own counsel with an instruction that their conversation was excluded, though at this time it was clearly admissible—and stooped over, as the respondent thought to pick up the reins; instead, he presented a revolver and fired at the respondent, whereupon the respondent drew his revolver and fired at the deceased with the results above stated.

That the story of the respondent is contradicted by other witnesses and presents some improbabilities may be true; but whatever occurred from the time of their meeting on the morning of the shooting, wherever it took place, whether in the road, as the state claims, or in the woods, as claimed by the respondent, is a part of the *res gestae*

as having a direct bearing on who was the aggressor, the only disputed issue in the case. Evidence on either side as to what conversation took place at this meeting should have been admitted as throwing light upon the acts of either. *People* v. *Taylor*, 177 N. Y., 237; Bish. Crim. Pro. Vol. I, 1084-85. *State* v. *Pike*, 65 Me., 111, 114; *State* v. *Forsythe*, 89 Mo., 667, 672; *State* v. *Elvins*, 101 Mo., 243, 246; *State* v. *Walker*, 77 Me., 488.

As the Alabama Court expressed it in the case of *Collins* v. *State*, 138 Ala., 57, 61: "In proving the homicide it was competent to show in connection with the killing all the attendant circumstances; who were present, what was said and done, and every other fact connected with the transaction and so related to form a part of the *res gestae*. So, too, any chain of facts or circumstances continuous in their nature leading up to and eventuating in the homicide. It may be said generally that all parts of one continuous transaction though not shown to have any immediate connection with the offense—the culmination of all the circumstances and facts proximate to the consummation of the crime which tend to shed light on the main inquiry—are admissible."

So far as the respondent's story of what took place at this meeting is entitled to weight, he has the undoubted right to have all admissible facts passed on by the jury. What credence shall be given to it is for the jury.

It may be that the result would have been no different; but without complete knowledge of the nature of the evidence other than alleged threats were made by the deceased just prior to the shooting, this Court can not say that the entire conversation which took place on this morning may not form a basis for a reasonable doubt in the minds of the jury as to who was the aggressor, especially in the light of the resentment the deceased may instinctively have felt if the respondent's account of the reason for his discharge was believed, upon finding the respondent on his way toward the home he had dishonored and in hiding until the husband had passed on his way for his daily trip to the village.

In any event in the eye of the law the respondent was on trial for his life and is entitled to have his account of all that took place at the eventful meeting between himself and the deceased passed upon by a jury. *State* v. *Walker*, 77 Me., 488, 492

*Exception sustained.*